.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY EARL RICHARD,<br><br>            Petitioner,<br><br>       v.<br><br>SUSAN HUBBARD,<br><br>            Respondent. | No. 2:12-cv-1436 GEB DB P<br><br><br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.  Petitioner challenges a judgment of conviction entered against him in the Sacramento County Superior Court on charges of attempted murder and robbery.  He seeks federal habeas relief on the following grounds: (1) the trial court's removal of a juror in mid-trial for cause violated his right to due process; (2) his conviction is not supported by sufficient evidence; and (3) an evidentiary ruling by the trial court violated his Fourth Amendment rights.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

////

1

**I.  Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendants Anthony Earl Richard and David Griffin were convicted by jury of robbing and attempting to murder Raymond Amayao. Additionally, the jury found that Richard personally discharged a firearm causing great bodily injury and that Griffin was involved in a crime in which a principal was armed with a firearm.
>
> On appeal, both Richard and Griffin contend that (1) the trial court violated their jury trial rights by discharging a juror. Richard alone contends that (2) the evidence was insufficient to sustain the finding that he discharged a firearm causing great bodily injury. And Griffin alone contends that (3) the trial court violated his federal due process rights because it failed to follow the proper procedure in response to Griffin's objection that the prosecutor discriminated based on group bias in exercising peremptory challenges to prospective jurors and (4) the trial court abused its discretion and violated his due process rights in admitting evidence that Griffin was present during a probation search of the apartment of Richard's girlfriend.
>
> None of the contentions has merit. Therefore, we affirm.
>
> **FACTS**
>
> At the outset, only a brief summary of the facts is necessary. We discuss the evidence in more detail later as it pertains to the defendants' contentions.
>
> On the evening of January 29, 2007, Raymond Amayao drove to a shopping center near Center Parkway and Mack Road in Sacramento County. As Amayao pulled in he noticed a white Buick Park Avenue. Richard and Griffin, along with codefendant Zachary Tyler, were in the Park Avenue with two females. Amayao parked his car close to a liquor store in the shopping center and was called over by someone in the Park Avenue. Amayao approached the vehicle and was asked by a passenger for help with jump starting another car. Amayao agreed and then, driving his own car, followed the Park Avenue out of the shopping center and around the corner onto Seyferth Way.
>
> The Park Avenue stopped, and Amayao parked behind it. Richard exited the Park Avenue from the driver's side of the backseat and approached Amayao's car on the passenger side. Opening the passenger side door, Richard pulled out a gun, pointed it at Amayao, and said to Amayao, "break yourself," meaning, "give me your money." Amayao gave Richard $24 he had in his pocket and then heard Griffin, who had been the passenger in the front seat of

the Park Avenue, yelling to Richard to shoot Amayao. Richard shot Amayao three times, hitting Amayao in his side twice and back once.

Amayao sped off while Richard continued to fire at his car, breaking the back window. Amayao drove away until he crashed on the front yard of a home on Seyferth Way. He banged on the front door and received help from the couple who lived at the home until an ambulance arrived. Amayao survived but still had bullet fragments in the area of his left leg or groin at the time of trial.

**PROCEDURE**

The district attorney filed an amended information charging Richard, Griffin, and codefendant Tyler with attempted murder (Pen.Code, §§ 187, subd. (a), 664—count one) and robbery (Pen.Code, § 211—count two) and charging Griffin, alone, with possession of a concealed firearm (Pen.Code, § 12101, subd. (a)—count three).[1] As to Richard only, the amended information alleged that, in committing counts one and two, he personally discharged a firearm (§ 12022.53, subd. (c)), personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), personally used a firearm (§§ 12022.5, subds.(a)(1), 12022.53, subd. (b)), and personally inflicted great bodily injury (§ 12022.7, subd. (a)). As to Griffin and Tyler only, the amended information alleged that, in committing counts one and two, a principal was armed with a firearm. (§ 12022, subd. (a)(1).)

On the district attorney's motion, the trial court dismissed count three during trial. The jury found defendants guilty on the remaining counts and found true each of the enhancement allegations.

The trial court sentenced Richard to seven years in state prison on count one, with an additional 25 years to life for personally discharging a firearm causing great bodily injury. It imposed and stayed sentence on count two.

The trial court sentenced Griffin in connection with another case, imposing a consecutive two years four months (one-third the middle term) in state prison for count one, plus an additional four months because a principal was armed. The court stayed count two. Including the sentence imposed in the consolidated case, Griffin was sentenced to a total term of 19 years eight months.

Codefendant Tyler is not a party to this appeal.

People v. Richard, No. C060092, 2010 WL 4794942, at *1–2 (Cal. Ct. App. Nov. 24, 2010).

////

////

---

[1] Hereafter, unspecified code references are to the Penal Code.

3

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is

1 "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded

6

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." 562 U.S. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

   **A. Discharge of Juror**

In his first ground for relief, petitioner claims that the trial court violated his federal constitutional rights in removing a juror in mid-trial for cause. (ECF No. 49 at 7-26.)[2]

   **1. State Court Decision**

The California Court of Appeal described the background to this claim, and its reasoning thereon, as follows:

> During trial, it came to the court's attention that a juror had been making comments in the hall outside the courtroom about the trial proceedings and a witness. The court investigated and determined that the comments were made, in violation of the court's admonition not to discuss the case and not to form opinions before deliberations. Based on its determination, the court discharged the juror and replaced him with an alternate. Both defendants assert that discharging the juror violated their Sixth Amendment and Fourteenth Amendment rights because it was without good cause. To the contrary, good cause supported the discharge.
>
> **A. Law Concerning Juror Discharge**
>
> A defendant has a constitutional right to a unanimous verdict by a fair and impartial jury. (Cal. Const., art. I, § 16; U.S. Const., 6th & 14th Amends.; see also People v. Wheeler (1978) 22 Cal.3d 258, 265, 148 Cal.Rptr. 890, 583 P.2d 748.) Consistent with this constitutional right, a trial court may discharge a sworn-in juror under some circumstances. Section 1089 provides in relevant part: "If at any time, whether before or after the final submission of the

---

[2] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

7

case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, . . . the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors."

"Removing a juror is, of course, a serious matter, implicating the constitutional protections defendant invokes. While a trial court has broad discretion to remove a juror for cause, it should exercise that discretion with great care." (People v. Barnwell (2007) 41 Cal.4th 1038, 1052, 63 Cal.Rptr.3d 82, 162 P.3d 596, fn. omitted.) "When a court is informed of allegations which, if proven true, would constitute good cause for a juror's removal, a hearing is required. [Citations.]" (Id. at p. 1051, 63 Cal.Rptr.3d 82, 162 P.3d 596, original italics.) "A trial court facilitates review when it expressly sets out its analysis of the evidence, why it reposed greater weight on some part of it and less on another, and the basis of its ultimate conclusion that a juror was failing to follow the oath." (Id. at p. 1053, 63 Cal.Rptr.3d 82, 162 P.3d 596.)

On review, we must ensure that the grounds for a juror's disqualification "appear on the record as a """"demonstrable reality.""""" [Citations.] . . . This standard 'indicates that a stronger evidentiary showing than mere substantial evidence is required to support a trial court's decision to discharge a sitting juror.' [Citation.]" (People v. Barnwell, supra, 41 Cal.4th at p. 1052, 63 Cal.Rptr.3d 82, 162 P.3d 596.) "Under the demonstrable reality standard, . . . the reviewing court must be confident that the trial court's conclusion is manifestly supported by evidence on which the court actually relied." (Id. at p. 1053, 63 Cal.Rptr.3d 82, 162 P.3d 596.)

**B. Events Supporting Juror Discharge**

The victim, Raymond Amayao, testified during the latter part of the first day of testimony at trial and during the first part of the second day. In response to many of the questions posed to him, Amayao testified that he could not remember.

During the afternoon session of the second day of testimony, a spectator informed the court that she had heard a juror talking about the case in the hallway. Under oath, the spectator stated that a male juror, later identified as Juror No. 11, said something like "second day, second witness and all they can say is I don't remember. I didn't remember. I don't remember." The juror said "[s]omething about it being a waste of time or expressing frustration with that kind of testimony." The spectator also informed the court that a female juror sitting across the hallway from Juror No. 11 said, "I'm glad I'm not the only one that feels that way." Several other jurors laughed.

The court questioned Juror No. 11 outside the presence of the rest of the jury, and he admitted making the statements. He claimed they were made in a "joking manner." The court reminded Juror

8

No. 11 that it had repeatedly admonished the jury not to discuss the case or form opinions until jury deliberations after all the evidence was heard. The juror responded that he would follow the admonition.

The court then had the rest of the jury enter the courtroom. It reminded the jurors that they could not form an opinion about the case until it was given to them to decide and that they were not to discuss the case except in the jury room during deliberations. The jurors responded collectively that they could follow the admonition.

The court excused the jury and discussed the situation with counsel. The prosecutor expressed concerns about Juror No. 11's ability to be fair and not to prejudge the case. The three defense attorneys believed Juror No. 11 could be fair, and they blamed Amayao's purported lack of memory and the long waits in the hallway for the frustration that Juror No. 11 voiced. Counsel for codefendant Tyler suggested that, if the court was considering discharging Juror No. 11, more investigation was needed. The court offered to have the bailiff find out who Juror No. 11 was talking to and question her, but counsel backed away from his suggestion of further investigation.

After the matter was submitted, the court stated: "I specifically find juror misconduct. Tell him he is excused. Select another juror."

**C. Analysis**

The California Supreme Court has affirmed trial court findings of good cause to discharge jurors under section 1089 in a variety of contexts. For example, the court has "upheld a trial court's decision to discharge a juror for 'good cause' when continued jury service would force the cancellation of a juror's scheduled vacation (People v. Lucas [ (1995) 12 Cal.4th 415,] 488–489, 48 Cal.Rptr.2d 525, 907 P.2d 373), would be a financial hardship on the juror (see People v. Mickey (1991) 54 Cal.3d 612, 665, 286 Cal.Rptr. 801, 818 P.2d 84), or when a juror who anticipated starting a new job needed additional time to complete certain paperwork related to her old position (People v. Fudge (1994) 7 Cal.4th 1075, 1098–1099, 31 Cal.Rptr.2d 321, 875 P.2d 36)." (People v. Earp (1999) 20 Cal.4th 826, 892–893, 85 Cal.Rptr.2d 857, 978 P.2d 15 [affirming finding of good cause where juror's employer stopped paying for jury service and continuing service would be financial hardship].) In cases more similar to this case, the Supreme Court has also affirmed convictions when a juror was discharged because she was so emotionally involved in the case that she felt she could not follow the court's instructions concerning deliberation (People v. Collins (1976) 17 Cal.3d 687, 690, 131 Cal.Rptr. 782, 552 P.2d 742, limited on another ground in People v. Fields (1983) 35 Cal.3d 329, 351, fn. 9, 197 Cal.Rptr. 803, 673 P.2d 680) and another juror was discharged because he read a newspaper article about the trial and commented to nonjurors that he did not see how the defendant could have committed the crime (People v. Daniels (1991) 52 Cal.3d 815, 863–866, 277 Cal.Rptr. 122, 802 P.2d 906). In the latter case, the Supreme Court stated that "a judge may reasonably

conclude that a juror who has violated instructions to refrain from discussing the case or reading newspaper accounts of the trial cannot be counted on to follow instructions in the future." (Id. at p. 865, 277 Cal.Rptr. 122, 802 P.2d 906.)

Although the trial court may have better stated its reasons for discharging Juror No. 11 (see People v. Barnwell, supra, 41 Cal.4th at p. 1053, 63 Cal.Rptr.3d 82, 162 P.3d 596), there can be no doubt that Juror No. 11 was discharged because he violated the court's admonition not to discuss the case or form an opinion before jury deliberations and because of the accompanying inference that he would continue to violate the oath.

Juror No. 11 committed a serious violation of the court's admonition not to discuss the case or form opinions until deliberations.³ (See § 1122, subd. (b).) His claim that he could and would follow the court's instructions thereafter was not convincing in light of his failure to do so very early in the trial and his apparent belief that it was a joking matter. This establishes a demonstrable reality that he was unable to function properly as a juror. The trial court did not abuse its discretion in discharging Juror No. 11.

Richard relies heavily on People v. Wilson (2008) 44 Cal.4th 758, 80 Cal.Rptr.3d 211, 187 P.3d 1041 (Wilson) for his argument that the trial court here abused its discretion in discharging Juror No. 11 for what Richard contends were trivial matters. His reliance on Wilson is misplaced. That case involved several factors not present in this case, primarily the juror's status as the lone holdout for a life sentence on a jury deliberating on the death penalty, that made discharge of the juror in that case a violation of the defendant's Sixth and Fourteenth Amendment rights.

In Wilson, the trial court dismissed the lone African–American juror during the death-penalty-phase jury deliberations of a case against an African–American defendant. The juror was the lone holdout for a life sentence. He had initially voted for death but changed his vote based on his own experience with circumstances similar to the defendant's negative family dynamics. (Wilson, supra, 44 Cal.4th at pp. 813–814, 80 Cal.Rptr.3d 211, 187 P.3d 1041.) The trial court cited four reasons for dismissing the juror: (1) he concealed racial bias during voir dire, (2) he relied on facts outside the evidence, (3) contrary to the court's instruction he considered life without parole as worse than death, and (4) he prejudged the appropriate penalty, as shown by a comment to another juror during the guilt phase. (Id. at pp. 816–820, 80 Cal.Rptr.3d 211, 187 P.3d 1041.) The Supreme Court addressed each of the reasons given by the trial court and found that "none of [the] grounds [was] established to a demonstrable reality." (Id. at p.

---

³ Section 1122, subdivision (b) states: "The jury shall also, at each adjournment of the court before the submission of the cause to the jury, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves, or with anyone else, on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them."

10

841, 80 Cal.Rptr.3d 211, 187 P.3d 1041.) Richard focuses on the last of the reasons given in Wilson for the juror dismissal - prejudging the appropriate penalty. We do the same.

The juror in Wilson made a comment at a break during the guilt phase of the trial, wondering out loud whether a person can be held responsible when that person has no authority figure. (Wilson, supra, 44 Cal.4th at pp. 836–838, 80 Cal.Rptr.3d 211, 187 P.3d 1041.) In addressing this ground for discharge, the Supreme Court initially discussed whether the comment was a violation of the admonition not to discuss the case, even though violation of the admonition was not the ground upon which the trial court relied in discharging the juror. The court noted that trivial violations of the admonition do not require removal of the offending juror. (Id. at p. 839, 80 Cal.Rptr.3d 211, 187 P.3d 1041.) The court stated that the juror's "solitary and fleeting comments to a fellow juror, made during a break early in the guilt phase portion of the trial, were a technical violation of both section 1122 and the court's admonition to the jury not to discuss the case. But the violation was a trivial one: one, possibly two sentences, spoken in rhetorical fashion and not in an obvious attempt to persuade anyone. [The juror to whom the comment was made] averred that he did not respond, and none of the other jurors reported hearing the comments." (Id. at pp. 839–840, 80 Cal.Rptr.3d 211, 187 P.3d 1041.) The Supreme Court then moved on to the reason given by the court for discharging the juror - prejudging the penalty - and held that the comment made by the juror did not establish a demonstrable reality that the juror prejudged the question of penalty. (Id. at pp. 840–841, 80 Cal.Rptr.3d 211, 187 P.3d 1041.)

This case is different from Wilson in several key ways. First, the removal of the juror in Wilson occurred during penalty-phase deliberations, well after the offending statement was made during the guilt phase. Here, Juror No. 11 was removed as a prophylactic to further violations, soon after violating the court's admonition. Second, in Wilson, the statement was used as evidence that the juror had prejudged the question of penalty, concerning which the Supreme Court found no demonstrable reality of prejudgment. Here, Juror No. 11 was dismissed because he had exhibited an inability to follow the admonitions of the court and seemed to think it was a joking matter. Third, the juror in Wilson was the lone holdout for a life sentence, well into penalty-phase deliberations. Here, there were no deliberations and no indication of how Juror No. 11 would have voted had he heard all the evidence.

In the context of this case, Juror No. 11's statements were not fleeting and solitary. This was one of his first opportunities to violate the court's admonition, and he took the opportunity, thus supporting the inference that he would continue to take the court's instructions lightly. His dismissal did not violate the constitutional jury trial rights of Richard and Griffin.

Richard further argues that we must reverse because the trial court did not hold a hearing adequate to determine whether Juror No. 11 was fit to serve. In support of this argument, he claims that,

11

> because Juror No. 11 told the court that he would follow the court's admonitions, there was insufficient evidence to conclude that he would not follow the admonitions. Richard states: "[Juror No. 11's] answers to the court's extremely limited questions were appropriate, respectful, and indicative of an intent to follow the court's orders scrupulously." To the contrary, Juror No. 11 had already taken an oath to follow the court's orders and had violated it. If he intended to be scrupulously obedient, he would not have violated the admonitions in the first place. The court's investigation was adequate.

Richard, 2010 WL 4794942, at *2–6.

### 2. Analysis

Petitioner has cited only California law in support of this claim. However, any claim that the trial court violated state law in removing Juror No. 11 is not cognizable in this federal habeas proceeding. See Estelle, 502 U.S. at 67-68 (a federal writ is not available for alleged error in the interpretation or application of state law). The only question before this court is whether the state appellate court's decision is contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d).

Petitioner has failed to identify any directly controlling United States Supreme Court precedent holding that a trial court's removal of a juror for cause after the trial has commenced violates the federal constitution. Indeed, "[u]nder Supreme Court precedent, the remedy for allegations of juror misconduct is a prompt hearing in which the trial court determines the circumstances of what transpired, the impact on the jurors, and whether or not the misconduct was prejudicial." Bell v. Uribe, 748 F.3d 857, 867 (9th Cir. 2014), cert. denied sub nom. DeMola v. Johnson, 135 S. Ct. 1545 (2015) (decision of state appellate court that trial judge properly removed a juror after she consulted a dictionary during deliberations in violation of the court's express instructions was not contrary to or an unreasonable application of clearly established federal law). Accordingly, the state court's decision denying this claim is not contrary to or an unreasonable application of United States Supreme Court authority and may not be set aside. 28 U.S.C. §2254(d)(1).

Nor is the Court of Appeal's decision based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).

1  The conclusion of the California Court of Appeal that Juror No. 11 demonstrated an

2  unwillingness to comply with the trial court's instructions is not unreasonable under the facts of

3  this case. Because the trial judge reasonably believed that Juror No. 11's actions "would prevent

4  or substantially impair the performance of his duties as a juror in accordance with his instructions

5  and his oath," Wainwright v. Witt, 469 412, 420 (1985) (quoting Adams v. Texas, 448 U.S. 38,

6  45 (1980)), his decision to excuse Juror No. 11 for cause did not violate the federal constitution.

7  Cf. Adams, 448 U.S. at 44 (recognizing in the context of a capital case a "legitimate interest in

8  obtaining jurors who could follow their instructions and obey their oaths"). Accordingly,

9  petitioner is not entitled to federal habeas relief on this claim.

### B. Sufficiency of the Evidence

Petitioner's next claim is that the evidence introduced at his trial is insufficient to support the jury finding that he inflicted great bodily injury on the victim. (ECF No. 42 at 27-38.)

### 1. State Court Decision

The California Court of Appeal described the background to this claim and its decision thereon, as follows:

> Richard contends that the finding that he personally discharged a firearm causing great bodily injury was not supported by substantial evidence. To the contrary, when all evidence is considered, it supports the finding.
>
> When a defendant contends the evidence was insufficient, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence - that is, evidence which is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (People v. Johnson (1980) 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738.) Substantial evidence includes circumstantial evidence and the reasonable inferences flowing from it. (In re James D. (1981) 116 Cal.App.3d 810, 813, 172 Cal.Rptr. 321.)
>
> Richard bases his contention on conflicts in the evidence concerning the identity of the shooter. For example, he claims that the description that Amayao originally gave of the shooter does not match Richard. While that may be true, other evidence established that Richard was the shooter.
>
> A videotape from a surveillance camera at the shopping center where Amayao encountered the defendants was shown to the jury. The jury was informed of the following stipulation: "The

prosecution and counsel for Mr. Tyler and counsel for Mr. Richard agree that the two individuals pictured in this videotape from the Liquor Center on January 29th, 2007, are in fact Anthony Richard . . . and Zachary Tyler . . . ." Therefore, Richard's presence in the place where Amayao first encountered his attackers was established by stipulation.

Although, as we explain, Amayao's identification of Richard as the shooter was inconsistent, Amayao did not waver in his statements that the shooter came from the backseat of the Park Avenue, right behind the driver, the position Richard occupied. The videotape showed that Tyler was driving the Park Avenue and Richard was sitting directly behind Tyler in the backseat. Amayao, on foot, approached the Park Avenue in the shopping center parking lot. The man in the backseat on the driver's side asked for help to jumpstart a vehicle around the corner. Amayao agreed and returned to his car. Amayao followed the Park Avenue out of the parking lot and around the corner. The Park Avenue stopped, and Amayao pulled in behind it. The backseat passenger on the driver's side, the same person who had asked for help, got out of the Park Avenue and approached Amayao's car on the passenger side. The man put one hand on top of the car and pointed a gun at Amayao with the other, telling Amayao to "break [him]self." Amayao gave the man $24. The passenger from the front seat then got out of the Park Avenue and told the man with the gun to shoot Amayao. The man with the gun shot Amayao several times.

Despite this connection in the evidence of Richard as the backseat, driver's side passenger who went to Amayao's car and shot him, Richard contends that the evidence was insufficient to support a finding that he was the shooter because of other inconsistencies. Amayao's initial description of the backseat passenger was a Black male adult, five feet six inches to five feet seven inches, 165 to 175 pounds, wearing blue jeans and a T-shirt printed with a pattern of green balls. He wore a do-rag on his head with his hair in cornrows or twisties. He was light-complected and had gold teeth. Somewhat inconsistent with Amayao's description of the shooter, the liquor store surveillance video showed that Richard was wearing a sweatshirt over a T-shirt. In the video, no ball pattern could be seen on the T-shirt. Also, Richard's defense counsel argued to the jury that Richard is not light-complected and does not have gold teeth. (But see CALCRIM No. 222 [arguments of counsel not evidence].) And none of the prints taken from Amayao's car matched Richard's.

Shown a photo lineup, Amayao selected Richard as the shooter, stating that he was 60 to 70 percent sure, thinking Richard's lips were thinner than the shooter's may have been. Later, Amayao said he was certain he had picked the shooter from the lineup.

Focusing on Amayao's initial description of the shooter, which he claims did not fit his description, and on Amayao's statement that he was 60 to 70 percent sure of the selection from the photo lineup, Richard contends the evidence was insufficient. To the contrary, the inconsistency of the evidence does not support a contention that

14

>the evidence was insufficient when, viewed as a whole, the evidence was substantial. Here, Amayao consistently identified the shooter as coming from the backseat on the driver's side. The surveillance video identified Richard as occupying that position. Furthermore, although he was somewhat hesitant at first, Amayao identified Richard as the shooter.
>
>Richard relies on People v. Trevino (1985) 39 Cal.3d 667, 217 Cal.Rptr. 652, 704 P.2d 719, overruled on another ground in People v. Johnson (1989) 47 Cal.3d 1194, 1221, 255 Cal.Rptr. 569, 767 P.2d 1047. In that case, the defendant was convicted of murder based on a fingerprint found in the victim's apartment. However, the defendant had previously been a guest in the apartment, and a neighbor's description of a man who left the apartment around the time of the murder did not fit the defendant. The Supreme Court found that the evidence was not sufficient. (Id. at pp. 677–678, 697, 255 Cal.Rptr. 569, 767 P.2d 1047.)
>
>Richard argues: "The evidence here is weaker than that the Trevino Court rejected as insufficient. Here, not even a fingerprint supported Mr. Amayao's after-the-fact tentative identification of a photograph proffered by a police officer. And the surveillance video demonstrated beyond cavil that Mr. Amayao's description of the shooter simply did not match Mr. Richard - neither his facial characteristics, like the color of his skin and the nature of his teeth, nor the clothes he was wearing. Further, Mr. Amayao did not identify Mr. Richard at the preliminary hearing or at trial."
>
>To the contrary, the evidence supporting the conviction in Trevino consisted of one fingerprint of a defendant who had previously been a guest in the victim's home. Here, the defense stipulated that Richard was present the night of the shooting; the surveillance video showed that Richard was the backseat, driver's side passenger in the Park Avenue; and Amayao consistently identified the backseat, driver's side passenger as the shooter. Along with Amayao's photo lineup identification of Richard, this evidence was sufficient to support the finding that Richard was the shooter.

Richard, 2010 WL 4794942, at *6–8.

## 2. Applicable Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011) (in conducting federal habeas review of a claim of insufficient

evidence, "all evidence must be considered in the light most favorable to the prosecution"); Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) ("[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt'"). Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, ___ U.S. ___, 132 S.Ct. 2, *4 (2011). Sufficiency of the evidence claims in federal habeas proceedings must be measured with reference to substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16.

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). "An 'appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal.'" McDaniel v. Brown, 558 U.S. 120, 131 (2010) (quoting Lockhart v. Nelson, 488 U.S. 33, 39 (1988)). Because this case is governed by the AEDPA, this court owes a "double dose of deference" to the decision of the state court. Long v. Johnson, 736 F.3d 891, 896 (9th Cir. 2013) (quoting Boyer v. Belleque, 659 F.3d 957, 960 (9th Cir. 2011)). See also Johnson, 132 S.Ct. at 2062 ("Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.").

### 3. Analysis

After reviewing the record in the light most favorable to the verdict, this court concludes that there was sufficient evidence introduced at petitioner's trial to support the jury finding that he personally discharged a firearm, thereby causing great bodily injury to the victim. This is true even though there was conflicting evidence regarding the identity of the shooter. If the record supports conflicting inferences, as it does here, the reviewing court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." McDaniel, 558 U.S. at 133 (quoting Jackson, 443 U.S. at 326). In evaluating the evidence presented at trial, this court may not weigh

conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997). Instead, as noted above, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319.

Juries have broad discretion in deciding what inferences to draw from the evidence presented at trial. This court may not "impinge[ ] on the jury's role as factfinder," or engage in "fine-grained factual parsing." Johnson, 132 S.Ct. at 2065. Further, "'[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir.1995) (citation omitted). As the Ninth Circuit has explained, "[t]he relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).

The jury evaluated the conflicting evidence in this case and the witnesses' credibility and found that petitioner caused great bodily injury to the victim. Based on the facts introduced at petitioner's trial, the jury's conclusion in this regard was reasonable and did not violate the due process clause. As explained by the California Court of Appeal, the defense stipulated that petitioner was present on the night of the shooting. Further, the surveillance video showed that petitioner was the backseat driver's side passenger in the vehicle; the victim consistently identified the backseat, driver's side passenger as the shooter; and the victim identified petitioner as the shooter in a photo lineup. All of this evidence supports the jury's verdict. The decision of the California courts that a rational trier of fact could have found beyond a reasonable doubt that petitioner shot the firearm and caused great bodily injury to the victim is not an unreasonable application of In re Winship and Jackson to the facts of this case. Accordingly, petitioner is not entitled to federal habeas relief on this claim.

In a slightly different but related claim, petitioner argues that there was insufficient evidence he personally fired the weapon that caused injury to the victim. He notes that the prosecution argued he was the shooter because, among other things, a bullet found at the crime scene matched a firearm found at his girlfriend's apartment. (ECF No. 42 at 43.) However, petitioner points out that: (1) at trial the victim did not remember any details of the shooting; (2)

there was a bullet fragment found in the victim's car that did not match the gun found at petitioner's girlfriend's apartment; (3) the prosecutor conceded in closing argument that there were two different firearms discharged at the victim's vehicle; and (4) while there was evidence there was more than one shooter, there was no evidence regarding which weapon fired the fatal shots. (Id. at 44, 47.) Petitioner argues that all of this evidence casts doubt on the jury finding that he was the person who shot the firearm that injured the victim. He contends that "the jury could only have concluded that either firearm could have inflicted the injuries on Mr. Amayao, but would not have been able to say which firearm inflicted the injuries." (Id. at 45, 48.)

Petitioner raised this claim in habeas petitions filed in the California Superior Court and California Supreme Court. (Resp't's Lod. Docs. 7, 9, 11, 13.) Citing In re Waltreus, 62 Cal.2d 218, 225 (1965), the Superior Court denied the claim on the grounds that it had been raised on appeal. (Resp't's Lod. Doc. 8.) The California Supreme Court also denied petitioner's habeas petition on procedural grounds. (Resp't's Lod. Docs. 10, 12, 14.) Respondent argues that the California Supreme Court's denial of this sufficiency of the evidence claim on procedural grounds constitutes a state procedural bar which precludes this court from addressing the merits of petitioner's claim in this regard. (ECF No. 49 at 23.)

As a general rule, "[a] federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 562 U.S. 307, 314 (2011) (quoting Beard v. Kindler, 558 U.S. 53 (2009)). However, a reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim. Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997).

Where deciding the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claim on the merits and forgo an analysis of procedural default. See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002): ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same"); Busby v.

1  Dretke, 359 F.3d 708, 720 (5th Cir. 2004) (noting that although the question of procedural default
2  should ordinarily be considered first, a reviewing court need not do so invariably, especially when
3  the issue turns on difficult questions of state law).  Under the circumstances presented here, the
4  court finds that petitioner's claim of insufficient evidence can be resolved more easily by
5  addressing it on the merits.  Accordingly, the court will assume that the claim is not procedurally
6  defaulted.  Because the state courts denied this claim on procedural grounds, the deferential
7  standard set forth in 28 U.S.C. § 2254(d) does not apply and the court must review this claim de
8  novo.  Stanley, 633 F.3d at 860.

9      As set forth above, there was evidence that petitioner was present the night of the
10  shooting, that he was seated in the backseat behind the driver, that the victim identified the
11  backseat, driver's side passenger as the shooter, and that the victim identified petitioner as the
12  person who shot him.  In light of all of this evidence, the jury could have found beyond a
13  reasonable doubt that petitioner fired the shot that injured the victim.  Certainly this court cannot
14  conclude that "no rational trier of fact could have agreed with the jury" on this issue.  Cavazos,
15  132 S.Ct. at *4.  Accordingly, petitioner is not entitled to relief on this claim.

16      **C. Fourth Amendment**

17      In his next ground for relief, petitioner claims that the trial court violated his rights under
18  the Fourth Amendment when it denied his motion to suppress evidence found in a search of his
19  girlfriend's apartment.  (ECF No. 42 at 41.)  He argues that "his conviction was obtained through
20  an illegal search in which the evidence was used to convict."  (Id. at 40.)  He claims that "the
21  police officers failure to produce a search warrant prior to entry into the apartment is a clear
22  violation of constitutional law under the Fourth Amendment."  (Id.)

23      Petitioner raised this claim in habeas petitions filed in the California Superior Court, the
24  California Court of Appeals, and the California Supreme Court.  (Resp't's Lod. Docs. 9, 11, 13.)
25  All of those habeas petitions were denied.  (Resp't's Lod. Docs. 10, 12, 14.)

26      The United States Supreme Court has held that "where the State has provided an
27  opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be
28  granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976).  There is no evidence before this court that petitioner was not provided a full and fair opportunity to litigate his Fourth Amendment claims in state court.  On the contrary, petitioner states, and the record reflects, that he filed a motion to suppress evidence seized from his girlfriend's apartment. (See Clerk's Transcript on Appeal at 90.)  Because petitioner had a fair opportunity to and did, in fact, litigate his Fourth Amendment claims in state court, his Fourth Amendment claim is barred from consideration in this federal habeas proceeding.  Stone, 428 U.S. at 494.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  January 20, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:8:richard1436.hc:orders;prisoner-habeas